The Douglass Law Firm, L.L.C.
By:   Michelle J. Douglass, Esq.
1601 Tilton Road, Suite 6
Northfield, New Jersey 08225
(609) 788-3595
(609) 788-3595 - Telefax
Attorney for Plaintiff, David W. Daniels

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY - CAMDEN

| | |
|---|---|
| DAVID W. DANIELS<br><br>                                    Plaintiff,<br><br>               vs.<br><br>WILLIAM J. TOLAND, Individually and in his official capacity as the Chief of Police of the Borough of Stone Harbor Police Department; PAUL J. REYNOLDS, Individually and in his official capacity as the Captain of the Borough of Stone Harbor Police Department; BRIAN LEVINSON, Individually and in his official capacity as the Chair of the Public Safety Committee; KENNETH HAWK and THE BOROUGH OF STONE HARBOR, Jointly, Severally and in the Alternative<br>                                    Defendants | Civil Action<br>Number 07-cv- _____<br><br><br>**COMPLAINT and<br>JURY DEMAND** |

The Plaintiff, David W. Daniels, residing at 44 Halbe Lane, Cape May

Court House, County of Cape May, and State of New Jersey, by way of

Complaint against the Defendants states:

## JURISDICTION

This Complaint presents Federal claims for which this Court has jurisdiction under 28 U.S.C. §1331 and 42 U.S.C. §1983, and State law claims for which this Court has supplemental jurisdiction under 28 U.S.C. §1367.

## VENUE

Venue lies with the United States District Court, Camden County, New Jersey, for the Federal and State claims presented.

## THE PARTIES

1.      The Plaintiff, David W. Daniels, is an individual residing at 44 Halbe Lane, Cape May Court House, New Jersey.

2.      The Defendant, William J. Toland, is the Chief of Police of the Borough of Stone Harbor Police Department, and, as such, is a department head of the Borough of Stone Harbor empowered to establish policy, rules, and regulations for the Borough of Stone Harbor. The

Defendant, William J. Toland, is sued in his individual capacity and in his official capacity.

3.   The Defendant, Paul J. Reynolds, is the Captain of the Borough of Stone Harbor Police Department, and as such, is the immediate supervisor of the Plaintiff. The Defendant, Paul J. Reynolds, is sued in his individual capacity and in his official capacity.

4. The Defendant Kenneth Hawk, is the Borough Administrator for the Borough of Stone harbor. He is sued in his individual and official capacities.

5.   The Defendant, Brian Levinson, is a Council member and the Chair of the Public Safety Committee of the Borough of Stone Harbor. He is sued in his individual and official capacities.

6.   The Defendant, the Borough of Stone Harbor, is a municipal entity with offices located at 9508 Second Avenue, Stone Harbor, New Jersey.

7.   The Borough of Stone Harbor Police Department is the law enforcement department of the Borough of Stone Harbor.

8.   The Borough of Stone Harbor Police Department is governed pursuant to Title 40A of the New Jersey Statutes, and the Plaintiff was

protected by Statutory regulations at all times, and for all events, set forth in this Complaint.

9.    The Plaintiff, Sergeant David W. Daniels, is a dedicated, lifetime public servant who was initially appointed to the position of police officer pursuant to New Jersey Statutes [specifically N.J.S.A. 40A:14-147] and pursuant to Resolution No. 113, and has for most of his adult life performed as a permanent member of the Borough of Stone Harbor Police Department, having through industrious, conscientious, and meritorious service, advanced within the Borough of Stone Harbor Police Department. The Plaintiff currently continues to serve as a Sergeant of Police for the Borough of Stone Harbor.

10.    The Plaintiff, in his position within the Borough of Stone Harbor, has statutory protection and may not be suspended, removed, fined, reduced in rank, or otherwise disciplined – directly or indirectly – by way of refusing to promote, removal from command of squad and supervisory duties, reassignment, restriction of duties, elimination of overtime, deprivation of specialized training, selective enforcement of disciplinary actions, retaliatory enforcement of disciplinary actions and punishment in retaliation for exercising his right to speech in reporting and objecting to the issuance of an illegal and/or deceptive order

regarding a third party DUI report, refusing to alter a DUI report, contacting the New Jersey Attorney General's office regarding advise on the legal process for the preparation of DUI reports, providing a witness statement on behalf of a fellow police officer who filed a gender discrimination complaint against Chief Toland and Captain Reynolds or for any other cause, other than incapacity or disobedience to the rules and regulations of the Borough of Stone Harbor Police Department, or the rules and regulations of the Borough of Stone Harbor, or the laws of the State of New Jersey.

## **FACTUAL BACKGROUND**

11. The Plaintiff, David W. Daniels, has been employed by the Borough of Stone Harbor as a police officer since 1986. From 1999 through to 2003 the Plaintiff was the Police Benevolent Association (PBA) Representative. At all times relevant to this matter, Plaintiff has been a member of PBA Local 59 in good standing. In 2004 Plaintiff was promoted to the position of Sergeant after having taken the Sergeant's competitive examination and scoring number one on the test.

12. The Plaintiff performed his duties as an officer and sergeant in an exemplary manner.

13. In December 2001, the Borough Administrator, Kenneth Hawk had attempted to have all the PBA members complete a form. The form was very detailed and requested information from the officers such as where their children went to school. Plaintiff expressed the opinion that the information requested violated certain privacy rights of the officers. He noted that a few of the members had children in special education schools or classes and that accordingly, the Borough was not entitled to the requested information.

14. Defendant Kenneth Hawk insisted that the form be completed in its entirety and threatened to withhold paychecks just prior to Christmas of that year, for those members who did not fully complete the form.

15. The Plaintiff contacted the Cape May County Prosecutor's Office to advise of the above situation with the Borough Administrator. After consulting with an Assistant Prosecutor, Plaintiff advised the Borough Administrator that he could not legally withhold the paychecks of the members and that he could not require the requested information from the members. Hawk thereafter contacted the Chief of Police to advise him that he was angry with the Plaintiff. The Chief instructed the Plaintiff not to have direct contact with Hawk.

THE DOUGLASS LAW FIRM, L.L.C. · NORTHFIELD, NEW JERSEY 08225

16. In or about December 2002, despite Plaintiff ranking Number one on the Sergeant's examination, Defendant Kenneth Hawk voted against Plaintiff becoming a Sergeant. Hawk sat on the promotion committee. Then Chief of Police Lawrence T. Wilson, later told the Plaintiff that Hawk stated that the Plaintiff had been overzealous in his union representation activities.

17. Since December 2002 Defendant Hawk has denied every union grievance filed by the Plaintiff without a legitimate basis.

18. On or about April 5, 2003 Patrolman Jackson made an arrest of a civilian for DUI. Plaintiff, who, at the time, was a patrolman, operated the breathalyzer and filled out the Alcohol Influence Report ("A.I.R."). On the A.I.R. several mistakes were made by the Plaintiff regarding the age of the accused and the breathalyzer serial number. Plaintiff immediately caught the mistakes and corrected the mistakes on the A.I.R. The corrections of the mistakes were made on the original A.I.R. as soon as they were noticed by Plaintiff and in accordance with the New Jersey State Police Guidelines. The A.I.R. was submitted to two supervisory officers for review and approval. Both supervisory officers reviewed and approved the A.I.R. as submitted by Plaintiff.

19.   On April 23, 2003, the Defendant Reynolds, who, at the time, was a Detective Sergeant, ordered Plaintiff to completely re-do the A.I.R. Plaintiff questioned the legality of this order. Plaintiff contacted the New Jersey Attorney General's Office Police Services Section for a legal opinion on the order to re-do the A.I.R. and was advised that a re-do of an A.I.R. was prohibited. Plaintiff also contacted several other police officers to solicit their opinion regarding the legality of the order issued by Defendant Reynolds.

20.   On May 12, 2003 Plaintiff prepared a written report regarding the order to re-do the DUI report as ordered by his Supervisor Sgt Judith Davies through an order to her from Defendant, then Captain, William J. Toland. Plaintiff noted in his written report dated May 12, 2003 that he had sought the advice of others regarding the propriety of Defendant Reynolds' order. Plaintiff further advised in his report that he believed Defendant Reynolds' order violated State Police Guidelines. He questioned the legality of the order and was concerned that had he changed the report that this would have affected his credibility as a witness in the DUI case.

21.   As a consequence of Plaintiff's refusal to alter the A.I.R. and his actions in objecting to same, Defendants instituted a formal Internal

Affairs investigation against the Plaintiff. Plaintiff was made aware that he was the target of an investigation and the subject of potential formal disciplinary charges. Prior to this, Plaintiff was never the subject of any major disciplinary action. Plaintiff had received, prior to this, two disciplinary actions: a reprimand in 1994 and a 24 hour loss of vacation time in 2000, which, was reduced, off the record by then Chief O'Connor, to a 12 hour loss of comp time.

22. Plaintiff was required to retain the services of a lawyer because official charges were being threatened against him, including interference with the administration of justice by the Borough. This charge would constitute a violation of the Criminal 2C Code. The intended charges were threatened as a direct result of Plaintiff seeking guidance from the Attorney General Police Services Section and members of the State Police regarding the order by Reynolds to alter a DUI report.

23. The attorney retained by the Plaintiff to represent his interests regarding the proposed disciplinary and criminal charges against the Plaintiff was successful in interceding and no formal charges were filed. Indeed, Defendant Toland acknowledged to the Plaintiff "Please be advised that no action will be taken against you in reference to IA investigation 03-048. The secondary investigation was initiated because of my concerns

that you went outside the agency with department issues and discussed the case with an attorney who is representing the defendant (in the DUI case). The investigation revealed that you went outside the agency because of a series of miscommunications between you, Sgt. Reynolds and Sgt. Davies. It is in my opinion that in your mind you felt as if you were not permitted to seek advice and information within the agency. Therefore your actions to seek information outside the agency were well within your rights under the Conscientious Employee Reporting Act."

24. Shortly after the above incident was concluded, Plaintiff took the Sergeant's examination. He scored No. 1 on the test. Despite Plaintiff's score, seniority and superior qualification, Defendants promoted Officer Schutta, who scored lower than the Plaintiff.

25. Ultimately, in February 2004, Plaintiff was promoted to the position of Sergeant. However, prior to the promotion, Defendant Toland polled the other Sergeants to obtain their vote on whether the Plaintiff should be promoted to the rank of Sergeant. Defendant Reynolds was the only officer who voted against the promotion. Toland did not express his opinion. In the history of the police department, the administration of the Police Department has never polled police department members to make a determination of whether to promote an officer.

26.   In the summer of 2005 Plaintiff discussed with Defendant Toland issues regarding Reynolds attitude and demeanor. Plaintiff advised Toland that he perceived that Reynolds' has a problem in his delivery and is often short and rarely takes the time to explain anything. Shortly thereafter, Reynolds confronted Plaintiff and said in a sarcastic manner something about the way he "delivers" things. This remark was intended to let the Plaintiff know that he was told by Toland what he had reported to Toland.

27.   Toland became the Chief of Police of the Borough of Stone Harbor in December 2005. Reynolds was promoted to the rank of Acting Captain at this time. On the night of the promotional ceremony, upon leaving Police Headquarters, Defendant Toland asked Plaintiff if he had had any further problems with Reynolds. Plaintiff advised he had not and noted that he was aware Defendant Toland had spoken to him (Reynolds) by way of the comment Reynolds had made.  Defendant Toland advised the Plaintiff that he would not stand for that type of demeanor in his department and to let him know if there were any further problems.

28.   Sgt. Davies appealed to the Borough Council the promotion of Reynolds. She claimed that she had been bypassed for the promotion based on her gender. Sgt. Davies had more time in grade than Reynolds

and she believed she was more qualified than Reynolds. Sgt. Davies also claimed that Reynolds' discriminated against her in that he treated her harshly in an effort to let her know that he is in charge.

29.  The rumors in the police department were that Sgt. Davies' appeal was a prelude to a lawsuit. Therefore, the council hired an outside agency to conduct an internal affairs investigation.

30. Upon information and belief, the investigation regarding Sgt. Davies' gender discrimination complaint against Reynolds and the Borough of Stone Harbor revealed negative and damaging information about Reynolds. Indeed, the Public Safety Committee and the Police Department had long been aware that Reynolds ranked at the bottom of the list for suitability as a superior officer based on a comprehensive psychological testing.

31.  Plaintiff was interviewed regarding Sgt. Davies' allegations. As part of the information conveyed by Plaintiff to the investigator, Plaintiff revealed that "Reynolds is just Reynolds" and explained that Reynolds is gruff and short in the way he conducts himself with others.

32.  Following the Plaintiff's interview regarding the discrimination complaint filed by Sgt. Davies, Reynolds questioned the Plaintiff in Reynolds' office as to what Plaintiff told the interviewer. The Plaintiff told

Reynolds  what he had relayed to the interviewer. Reynolds responded by angrily stating "Great, you threw me under the bus."

33.   In April of 2006, Plaintiff asked Defendant Reynolds to reconsider an order that violated the Department's long standing standard of minimum staffing. The order which released an officer for SWAT duties regardless of man power levels, would more than likely leave the Department and Borough with only one Officer patrolling the streets of the town.   The Plaintiff expressed his concerns for both police and public safety.   Defendant Reynolds denied the request.   Plaintiff filed a grievance through PBA Local 59 and ultimately met with Defendant's Reynolds and Toland at the first level of the Grievance procedure.   There were additional grievances discussed at the meeting along with the preferential treatment of one of the Plaintiff's subordinates which was undermining his authority as a supervisor and interfering with his and another officer's contractual time off.    The Plaintiff provided information about how he had received the information and who had provided it.   As a direct result of that union meeting, the Plaintiff was made aware that he was the subject of an internal affairs investigation and subsequently charged with several violations of departmental rules and regulations.

34.   Thereafter, Reynolds continuously singled Plaintiff out for purported offenses. He conspired with Defendants Toland and Levinson to selectively enforce discipline upon the Plaintiff. Plaintiff was denied requests for overtime, for schedule changes, days off and training. Reynolds' adverse and hostile actions continued throughout the years and were in retaliation for the Plaintiff having refused to participate in an illegal order issued by Reynolds, and for Plaintiff objecting to the issuance of an illegal order by Reynolds, and for filing a grievance over an order that had the potential of effecting officer and public safety, and for disclosing an illegal activity by Reynolds.

35.  In November 2006, Plaintiff could no longer tolerate the adverse and hostile treatment by Reynolds and reported same to Chief Toland, after reminding him of their December 2005 conversation. Chief Toland did nothing in response to Plaintiff's complaints about Reynolds.

36.   On or about December 15, 2006, after not having received any response from Chief Toland, Plaintiff filed a complaint with the union. The union representative sent a letter to Chief Toland reporting that the Plaintiff was the victim of a hostile work environment caused by Reynolds. In response, Chief Toland and Captain Reynolds ordered the Plaintiff to undergo a psychiatric evaluation. The order was to be delivered to the

Plaintiff's home by a marked car by an officer in uniform and when the Plaintiff was on vacation for the Christmas holiday. The Officer given the assignment felt it inappropriate and "just not right".  He telephoned the Plaintiff and arranged to deliver the order in the parking lot of the local hospital. The psychiatric evaluation was scheduled for January 8, 2007. The Defendants had no reason other than to cause Plaintiff grief when he ordered the document be delivered to the Plaintiff's home. The order could easily have been given to the Plaintiff upon his return from vacation.

37. Upon Plaintiff's return from the Christmas vacation, Chief Toland advised the Plaintiff that he had received a grievance from the PBA on his behalf and ordered Plaintiff to write a report documenting the events that constituted a hostile work environment by Captain Reynolds. Chief Toland ordered the Plaintiff to prepare the report and have it to him in one day.

38. The order by Defendants for Plaintiff to undergo a psychological evaluation was a disciplinary penalty intended to punish the Plaintiff  and not for any legitimate business reason.

39.  On or about January 10, 2007 Plaintiff filed his report with Chief Toland. The report detailed in chronological order the events constituting a pattern of harassment and retaliation by Captain Reynolds against the Plaintiff. The report also detailed the information regarding

Captain Reynolds' falsification of DUI reports and the sexual discrimination charge by Sgt. Davies.

40. As a result of the information contained in the January 10, 2007 report, Chief Toland was required to send the report to the Cape May County Prosecutor's Office for investigation and recommendation. Upon information and belief, the Cape May County Prosecutor's Office either failed to investigate the matter or returned it to the Borough of Stone Harbor Police Department for internal investigation. The Plaintiff, however, was never interviewed by the Cape May County Prosecutor's office.

41. Chief Toland was also required pursuant to the Attorney General Guidelines to conduct an Internal Affairs investigation regarding the allegations raised in the Plaintiff's January 10, 2007 report. Chief Toland hired a former Chief of Police who was not and never had been employed by the Borough of Stone Harbor to conduct the internal affairs investigation.

42. The internal affairs investigator obtained no statements from witnesses other than the Plaintiff (and Toland and Reynolds) as all other police employees were not required to speak to the investigator and most others were fearful of speaking to the investigator in that they feared

retaliation by Defendants Toland and Reynolds. Furthermore, the Borough's independent investigator was ordered by Chief Toland not to inquire about any potential criminal allegations made in the January 10, 2007 report even though those violations are also covered under Department Rules and Regulations and require internal affairs investigation.

43. Following receipt by Defendant Toland of the findings by the internal affairs investigator, Toland ordered the Plaintiff to undergo an additional psychiatric examination. The order to undergo another psychiatric exam was in retaliation for Plaintiff's having written the report detailing the falsification of DUI reports, sexual discrimination, harassment and retaliation. There was absolutely no legitimate business reason to require the Plaintiff to undergo another psychiatric evaluation.

44. Toland also retaliated against the Plaintiff by ordering him not to teach any Special Officer or Full Time Officer classes at a County Police Academy which the Plaintiff had regularly taught for years. And, for which the Plaintiff holds New Jersey Police Training Commission Certification. That certification is now in jeopardy due to the lapse in required instruction hours.

45. Toland also retaliated against the Plaintiff by removing him from his regularly assigned squad and removing him from all supervisory duties, in effect, demoting him on a de facto basis as a punitive measure and without just cause, written notice, a hearing and other due process rights.

46. Defendants Toland and Reynolds have continued to create, generate and maintain a hostile work environment for the Plaintiff.

47. Defendants have further retaliated against the Plaintiff by the selective enforcement of discipline and the issuance of excessive discipline.

## **FIRST COUNT**

### *(First Amendment; Retaliation for Union Activities)*

48. Plaintiff hereby incorporates by reference each and every allegation contained in all of the previous paragraphs as if set forth at length herein.

49. The speech of the Plaintiff in support of the position and action of the Policemen's Benevolent Association involved a matter of public concern as it related to safety, social, and other concerns of the community.

50.   The content, form, and context of the speech of the Plaintiff demonstrate that the speech of the Plaintiff involved a matter of public concern relating to safety, social, or other concerns of the community.

51.   The Plaintiff engaged in speech or activity protected by the First Amendment of the Constitution of the United States of America.

52.   The protected speech, action, or association of the Plaintiff was a substantial or motivating factor in the retaliatory action taken against the Plaintiff by the Defendants.

53.   The Defendants would not have taken the same action against the Plaintiff in the absence of the protected speech, activity or association of the Plaintiff.

54.   Union-related speech or action or association is protected by the First Amendment of the Constitution of the United States of America.

55.   The protection of the First Amendment of the Constitution of the United States of America for freedom of speech or association extends broadly over union activities.

56.   Speech arising in the context of union organization efforts has long been held to be a matter of public concern.

THE DOUGLASS LAW FIRM, L.L.C. · NORTHFIELD, NEW JERSEY 08225

57.   The speech, action, or association of the Plaintiff related to union activity, and safety for the community, was a matter of public concern.

58.   The actions taken by the Defendants denied the Plaintiff rights enforceable under 42 U.S.C. §1983.

59.   As a result of the actions taken by the Defendants, the Plaintiff has suffered a violation of his civil rights.  The Plaintiff has suffered mental anguish.  The Plaintiff has suffered loss and damage to his reputation.  The Plaintiff has suffered humiliation.  The Plaintiff has suffered emotional upset.  The Plaintiff has suffered loss of dignity and embarrassment.

**WHEREFORE**, the Plaintiff, David W. Daniels, demands judgment against the Defendants jointly, severally, and in the alternative, for:

a.   Compensatory damages;
b.   Punitive damages;
c.   Attorneys' fees and costs;
d.   An Order restraining the Defendants from any further harassment or retaliation of the Plaintiff;
e.   An Order re-instating the Plaintiff to his position as Sergeant or to a comparable command position; and,
f.   for such further relief as the Court deems equitable and just.

## SECOND COUNT
### (Constitution of the State of New Jersey)

60.    Plaintiff hereby repeats and incorporates by reference each and every allegation set forth in the preceding paragraphs of the Plaintiff's Complaint, as if more fully set forth at length herein.

61.    The actions taken by the Defendants denied the Plaintiff rights to speak, assemble, and associate, all as secured by the Constitution of the State of New Jersey.

62.    As a result of the actions taken by the Defendants, the Plaintiff has suffered a violation of his civil rights.   The Plaintiff has suffered mental anguish.   The Plaintiff has suffered loss and damage to his reputation.   The Plaintiff has suffered humiliation.   The Plaintiff has suffered emotional upset.   The Plaintiff has suffered loss of dignity and embarrassment.

**WHEREFORE**, the Plaintiff, David W. Daniels, demands judgment against the Defendants jointly, severally, and in the alternative, for:

a.    Compensatory damages;
b.    Punitive damages;
c.    Attorneys' fees and costs;
d.    An Order restraining the Defendants from any further harassment or retaliation of the Plaintiff;
e.    An Order re-instating the Plaintiff to his position as Sergeant or to a comparable command position; and,
f.    for such further relief as the Court deems equitable and just.

## THIRD COUNT
### *(Employment Contractual Rights)*

63.  Plaintiff hereby repeats and incorporates by reference each and every allegation set forth in the preceding paragraphs of the Plaintiff's Complaint, as if more fully set forth at length herein.

64.  The actions taken by the Defendants denied the Plaintiff rights to which he was entitled by contract of employment with the Borough of Stone Harbor and by statute.

65.  The actions taken by the Defendants denied the Plaintiff rights to which he was entitled under the rules, regulations, and policies of the Borough of Stone Harbor.

66.  As a result of the actions taken by the Defendants, the Plaintiff has suffered a violation of his civil rights.  The Plaintiff has suffered mental anguish.  The Plaintiff has suffered loss and damage to his reputation.  The Plaintiff has suffered humiliation.  The Plaintiff has suffered emotional upset.  The Plaintiff has suffered loss of dignity and embarrassment.

**WHEREFORE**, the Plaintiff, David W. Daniels demands judgment against the Defendants jointly, severally, and in the alternative, for:

a.  Compensatory damages;
b.  Punitive damages;

c.   Attorneys' fees and costs;

d.   An Order restraining the Defendants from any further harassment or retaliation of the Plaintiff;

e.   An Order re-instating the Plaintiff to his position as Sergeant or to a comparable command position; and,

f.   for such further relief as the Court deems equitable and just.

## FOURTH COUNT

### *(Conscientious Employee Protection Act)*

67.   Plaintiff hereby incorporates by reference each and every allegation contained in all of the previous paragraphs as if set forth at length herein.

68.   Plaintiff reported and disclosed conduct to his supervisor and to a government agency by the Defendants that was illegal, unethical and in direct contravention of the duties inherent in law enforcement and the proper administration of local government.

69.   Defendants retaliated against the Plaintiff by harassing him, taking unwarranted disciplinary action, demoting and attempting to terminate the Plaintiff and other adverse employment actions in response to Plaintiff's disclosure of Defendants' illegal , unethical and improper conduct.

70. Defendants actions are in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq*.

**WHEREFORE**, the Plaintiff, David W. Daniels demands judgment against the Defendants jointly, severally, and in the alternative, for:

a. Compensatory damages;
b. Punitive damages;
c. Attorneys' fees and costs;
d. An Order restraining the Defendants from any further harassment or retaliation of the Plaintiff;
e. An Order re-instating the Plaintiff to his position as Sergeant or to a comparable command position; and,
f. for such further relief as the Court deems equitable and just.

## FIFTH COUNT

### *(Violation of Public Policy)*

71. Plaintiff hereby incorporates by reference each and every allegation contained in all of the previous paragraphs as if set forth at length herein.

72. The Defendants,  in taking adverse employment action against the Plaintiff, as described above, in retaliation for the Plaintiff exercising his rights for free speech, assembly, association and to petition the government, all as guaranteed by the Constitution of the United States of America and the Constitution of the State of New Jersey, have acted in

contravention to the clear mandate of public policy for the State of New Jersey.

73. The public policy of the State of New Jersey mandates that employers conduct fair and thorough investigation prior to imposing discipline upon an employee.

74. The public policy of the Borough of Stone Harbor mandates that the Borough of Stone harbor conduct a fair and thorough investigation prior to imposing discipline upon an employee.

75. The Defendants failed to comply with public policy of the State of New Jersey, and of the Borough of Stone Harbor, in failing to give the Plaintiff prior notice and an opportunity to be heard prior to the Plaintiff suffering discipline by the action of the Defendants.

76. The Defendants deliberately mis-applied the provisions for discipline as prescribed by the public policy of the State of New Jersey and by the rules and regulations of the Borough of Stone Harbor. This deliberate mis-application and avoidance was motivated by malice or bad faith or an intent to injure the Plaintiff, which did, in fact, cause the Plaintiff to suffer harm and damage.

77. With respect to the Plaintiff, the Defendants wrongfully failed to apply the provisions of the Constitution and statutes of the State of New

Jersey and the Borough of Stone Harbor for the imposition of discipline, which proximately caused the Plaintiff to suffer harm and damages.

78.   As a direct result of the actions of the Defendants, contrary to the public policy for the State of New Jersey, the rights of the Plaintiff were violated, the Plaintiff has suffered mental anguish, loss and damage to his reputation, humiliation, emotional upset, and loss of dignity. The Plaintiff has suffered embarrassment.

**WHEREFORE**, the Plaintiff, David W. Daniels, demands judgment against the Defendants for:

a.   Compensatory damages;
b.   Punitive damages;
c.   Attorneys' fees and costs; and,
d.   for such further relief as the Court deems equitable and just.
e.   An Order re-instating the Plaintiff to his position as Sergeant or to a comparable command position; and,
f.   for such further relief as the Court deems equitable and just.

## JURY DEMAND

The Plaintiff, David W. Daniels, hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

THE DOUGLASS LAW FIRM, L.L.C.

*s/ Michelle J. Douglass*

By: _____

Michelle J. Douglass, Esquire

Dated:    September 10, 2007

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Michelle J. Douglass, Esquire as trial counsel in this matter.

THE DOUGLASS LAW FIRM, L.L.C.

*s/ Michelle J. Douglass*

By: _____

Michelle J. Douglass, Esquire

Dated:    September 10, 2007

Case 1:33-av-00001   Document 613   Filed 09/10/2007   Page 28 of 28

# **CERTIFICATION**

The undersigned counsel certifies that there is no other action(s) pending or contemplated involving the subject matter of this controversy at this time.  I certify the foregoing to be true.  I am aware if the above is willfully false, I am subject to punishment.

THE DOUGLASS LAW FIRM, L.L.C.

By: *s/ Michelle J. Douglass*

Michelle J. Douglass, Esquire

Dated:  September 10, 2007